THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HERMAN TIBBS, Defendant-Appellant.

Fourth District    No. 16898

Opinion filed December 30, 1981.

74

Daniel D. Yuhas and James G. Woodward, both of State Appellate Defender's Office, of Springfield, for appellant.

Basil G. Greanias, State's Attorney, of Decatur (Robert J. Biderman, of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE LONDRIGAN delivered the opinion of the court:

The defendant was convicted of attempted murder, armed robbery, and aggravated kidnapping and sentenced to concurrent prison terms of 55, 30, and 15 years respectively; he appeals his conviction and sentence for attempted murder. The defendant's guilt for that offense is based on accountability and his 55-year sentence is an extended term. The defendant argues that the evidence does not support the conviction and that the trial judge improperly sentenced him as a principal. We affirm the conviction and the sentence.

The defendant argues first that the evidence does not establish either that he had the specific intent necessary to be held accountable for attempted murder or that he engaged in any conduct that facilitated the offense; the defendant concedes, however, that the evidence proved him guilty of armed robbery and aggravated kidnapping. At trial the State relied largely on the victim's testimony and on the defendant's statements to the police; the trial court had previously denied the defendant's motion to suppress the statements, and the defendant does not renew that objection here.

The complainant, Thomas Slider, testified that he was standing beside his van in a parking lot when Smith and Hardy forced him into the back part of the van and drove off; after traveling some distance the van

got stuck in a ditch. During the effort to extricate the van, Slider saw a third man lend his assistance; a car was parked nearby. During this time Smith threatened Slider with a pistol. After pulling the van from the ditch they resumed their journey, and Slider noticed the same car following them. They then stopped by a cornfield; when Slider got out of the van he saw the third man again, and the car was parked nearby. Slider was ordered to lie face down on the ground; the three men stood next to him. Slider then heard a shotgun go off but did not see who fired it; shot was later removed from his right forearm and wrist. Slider's wallet was taken from him before he was shot.

Tibbs' written and oral statements to the police filled in some gaps in Slider's narration: Tibbs was the third man, the one in the car, and Smith fired the shotgun at Slider. According to Tibbs he and Hardy agreed with Smith to steal a vehicle; in their search for one Hardy was carrying a handgun and Smith a shotgun. Tibbs recounted the details of the taking of the van, the problem in the ditch, and the final stop at the field. Smith fired the shotgun while Tibbs had his back to Slider.

After chasing the van later that same evening police found it abandoned. Tibbs testified in his own behalf; he recanted his inculpatory statements and presented an alibi.

■■ The defendant argues that the State's evidence establishes only his presence when Slider was shot and is not enough to convict him of attempted murder. In *People v. Kessler* (1974), 57 Ill. 2d 493, 315 N.E.2d 29, however, the supreme court affirmed a defendant's conviction for attempted murder under similar circumstances. In that case the defendant waited in a car while his two associates broke into a tavern; the owner surprised them, and one of the burglars shot and wounded the owner with a gun they had discovered inside the building. Kessler's cohort also shot at a policeman while they were fleeing on foot. The only difference between the facts here and those in *Kessler* is that Tibbs was aware during the commission of the crime that Smith had the shotgun. The evidence therefore was sufficient to convict the defendant of attempted murder.

The defendant next argues that he cannot be sentenced to an extended term of imprisonment. Section 5—8—2 of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—2) permits the imposition of an extended term when either (*People v. Hamilton* (1980), 81 Ill. App. 3d 297, 401 N.E.2d 318) group of aggravating factors listed in section 5—5—3.2(b) (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(b)) exists. Subparagraph (1) of that section allows extended terms for repeat felons when certain conditions are met. Here the trial judge relied on subparagraph (2) which authorizes an extended term "[w]hen a defendant is convicted of any felony and the court finds that the offense was

accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty" (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(b)(2)). The defendant argues that section 5—5—3.2(b)(2) may be invoked against principals only and not accomplices; the defendant does not dispute the trial court's characterization of the offense here as brutal and cruel within the meaning of the statute.

Assuming his guilt as an accomplice, the defendant reasons that the accountability provisions make him liable only for the elements of the offense and that the characteristics of the offense are not elements. The State does not need to plead and prove the aggravating factors listed in section 5—5—3.2(b) for an extended term to be imposed. (*People v. Grier* (1980), 90 Ill. App. 3d 840, 413 N.E.2d 1316 (interpreting subparagraph (1)); *People v. Peddicord* (1980), 85 Ill. App. 3d 414, 407 N.E.2d 89 (interpreting subparagraph (2)).) *Peddicord* said:

"Where a fact is essential to the grade or degree of an offense, it is, in effect, an element. However, the factors to be considered when imposing a sentence under the extended-term provision are not essential to the grade or degree of an offense, and thus are not elements of the offense charged. Therefore, these factors need not be pleaded or proved at trial." 85 Ill. App. 3d 414, 418, 407 N.E.2d 89, 91.

Section 5—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 5—1) provides:

"Accountability for Conduct of Another. A person is responsible for conduct which is an element of an offense if the conduct is either that of the person himself, or that of another and he is legally accountable for such conduct as provided in Section 5—2, or both."

The defendant argues that because section 5—1 makes him responsible only for "conduct which is an element of an offense," he is not responsible for conduct that is not an element of an offense, such as the brutal and cruel nature of the offense here.

■■ The defendant mistakenly interprets the accountability provision, section 5—1, as making him liable only for elements of the offense and nothing more—or less. Although criminal statutes must be construed narrowly (*People v. Lutz* (1978), 73 Ill. 2d 204, 383 N.E.2d 171), we find no inconsistency between sections 5—1 and 5—5—3.2(b)(2) in sentencing accomplices to extended terms.

The defendant's argument proves too much. Section 5—1 also applies to principals, for it says that one is responsible for conduct that is an element of an offense "if the conduct is * * * that of the person himself * * *." By the defendant's reasoning, then, principals may not be sentenced to extended terms because like accomplices they are liable only

for elements of offenses. Although this argument was not raised in *Peddicord*, we note that the defendant in that case was a principal. Section 5—1 therefore provides no distinction useful to the defendant between principals and accomplices.

The defendant cites *People v. Sangster* (1981), 95 Ill. App. 3d 357, 420 N.E.2d 181, *appeal allowed* (1981), 85 Ill. 2d 572, to support his distinction between the guilt and punishment of accomplices. The statute interpreted there, however, uses different terms. *Sangster* dealt with section 5—8—4(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—4(a)), which permits a trial court to impose consecutive sentences for offenses committed in "a single course of conduct" and motivated by the same "criminal objective" when at least one of the offenses is a Class X or Class 1 felony "and the defendant inflicted severe bodily injury * * *." *Sangster* held that section 5—8—4(a) does not apply to accomplices, interpreting the phrase "the defendant inflicted severe bodily injury" to mean that only the person who performed the act falls within the scope of the statute.

Unlike the provision for consecutive sentences, section 5—5—3.2(b)(2) focuses on the offense rather than the offender, requiring that the trial court find "that the offense was accompanied by * * *"; the nature of the act and not the identity of the actor permits the imposition of the enhanced penalty. This difference is a real one and is dispositive.

The defendant also relies on *People v. Merchel* (1980), 91 Ill. App. 3d 285, 414 N.E.2d 804; that case interpreted section 5—8—1(a)(1) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(a)(1), which authorizes a term of natural life imprisonment in the case of murder "if the court finds that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." *Merchel* parsed the statute in this way:

> "Divided into its elements, the provision holds that a court may impose a natural life sentence for murder only if the murder was (1) accompanied by behavior which was (2) brutal and heinous and which (3) indicated wanton cruelty *on the part of the perpetrator*." (Emphasis added) (91 Ill. App. 3d 285, 293, 414 N.E.2d 804, 810.)

Although this statute uses the same words as the extended term provision, we do not find the paraphrase persuasive. *Merchel* did not involve accountability; the defendant argued that the statute is unconstitutionally vague, and the court held that it is not.

■■ The defendant attacks his sentence for another reason. He cites several excerpts from the record to show that the trial judge considered him a principal in the attempted murder even though he was convicted as an accomplice. The defendant is not arguing that accomplices must invariably

receive shorter sentences than principals, but that when a conviction is based on accountability the trial judge is not free to disregard that and instead treat the defendant as a principal. The trial judge made several comments equating Tibbs' role in the attempted murder with that of the principal, Smith. Yet the record also shows that the trial judge understood that Smith and not Tibbs fired the gun. Although accomplices share equal guilt with their principals and " 'may be punished in the same manner' " (*People v. Dukett* (1974), 56 Ill. 2d 432, 451, 308 N.E.2d 590, 600, quoting *People v. Clements* (1963), 28 Ill. 2d 534, 540, 192 N.E.2d 923, 926), the extent of a defendant's participation in the offense is relevant in determining the appropriate sentence (*People v. Morris* (1969), 43 Ill. 2d 124, 251 N.E.2d 202). The trial judge's comments here did not depart from the evidence but instead expressed his view regarding the defendant's role.

We therefore affirm the conviction and sentence for attempted murder.

Affirmed.

WEBBER and TRAPP, JJ., concur.